## Albert *et al. versus* Frick.

1. Plaintiffs may recover upon an entire contract, by showing substantial performance in good faith, notwithstanding there are some unimportant omissions.

2. More especially is this true where the defendant has received and enjoyed the fruit of the labor performed.

3. Plaintiffs agreed to furnish a boiler and an upright engine all complete, piping and also one set of ratchet head-blocks, for twenty-one hundred dollars and an old engine and boiler. *Held*, that they might recover for the boiler, engine, and piping, though the head-blocks, worth from eighty to a hundred dollars, had been returned to them as defective, and had not been replaced.

4. It was not error for the Court to charge the jury "that good faith and fair dealing required that they (the defendants) should have permitted all proper tests of the capacity of the engine, and their refusal to have such test applied is strong evidence that they believed such tests would operate against them," the fact of such refusal being in dispute, when the facts were left to the jury to determine, and the charge on the whole was clear and correct, and not calculated to mislead.

[Albert *et al. v.* Frick.]

ERROR to the Court of Common Pleas of *Northumberland County.*

Assumpsit by George Frick, superintendent ; A. H. Strickler, Joseph Price, and John Philips, executive committee ; and A. O. Frick, W. H. Snyder, D. Hollinger, Samuel Hoeflich, J. S. Lesher, S. B. Rhinehart, L. W. Wingert, Daniel Hoover, A. H. Strickler, Joseph Price, John Philips, and Daniel Tuttle, members of a company trading and doing business under the firm name of Frick & Co., against Isaac Albert and F. A. Lahr, doing business under the name of Albert & Lahr, to recover the price of a steam-engine, etc., sold and delivered. Plea non-assumpsit.

The defendants in 1874 owned a saw-mill run by steam-power. On the 27th of March of that year, plaintiffs and defendants entered into a written agreement, by the terms of which the former agreed as follows :

" We hereby agree to make for you one return tubular boiler,—sixty-horse boiler,—size as follows : 54″ diameter, 16 feet long ; dome 30″ diameter, 30″ high, with eighty 3″ tubes ; iron in shell $\frac{3}{8}$″ ; heads $\frac{7}{16}$″. All best iron and all long seams double riveted ; also smoke chamber and door and smoke pipe connections from boiler to smoke-stack ; cast-iron front and grates, safety valves, gauge-cocks, steam-gauge, and glass water-gauge, check valve and blow-off cock, wall bolts for front, all complete ready for setting up, and guarantee all best work and material.

" Also one second-hand 14″ x 20″ upright engine all complete, in first-rate order, with Hunton governor, and one new pump with heater combined as per photo. Also all piping between engine and boiler and pumps and boiler, and exhaust pipe, all wall bolts, pump and governor belts, all fixtures necessary to complete the job, except masonry, and deliver all the above on cars at Greencastle. We to furnish skilled man to put up the work, you to board him free. Also one set of ratchet head-blocks to fit your mill. All as above described for the sum of twenty-one hundred dollars, and your old engine and boiler with all the fixtures, and delivered on cars at your expense. We guarantee the engine and boiler all to perform satisfactorily, and drive the machinery without strain to engine or boiler,—to be forty-horse power capacity. The boiler to be ready for shipping in four weeks from acceptance of this contract. The engine to be shipped soon as foundation is ready.

" Terms as follows : Five hundred dollars on signing this contract ($500). Five hundred dollars when work is up and performs as specified. The balance in two equal payments at three and six months."

[Albert *et al. v.* Frick.]

Upon the trial the following facts appeared: The five hundred dollars were paid and the engine was delivered to the defendants, and started at sawing on the 25th of May, 1874. On the 29th of that month defendants wrote to the plaintiffs that the head blocks were at hand, but that they could not use them; that the figuring was wrong and the levers too short; that the engine did not work satisfactorily yet, had too little power, and did not run the saw satisfactorily with seventy pounds of steam.

They returned the head-blocks to the plaintiffs and no others were supplied. These blocks were worth between eighty and a hundred dollars. There was considerable conflict of testimony as to whether or not the engine was of forty-horse power. Plaintiffs' superintendent sent a postal card to the defendants, June 4th, 1874, saying they would send a man to make the engine and machinery satisfactory. On the 11th of June, 1874, the mill burnt down.

A. O. Frick, a witness for the plaintiff, testified that he went to look at the engine, and when he got there the mill was burned down and the engine damaged. He was there a while after that again, probably two months afterward; " the engine was in operation then when I got there. I don't know who had put it up. They had set it up and started without notifying us, and the engine was not the same in all its parts as when we had furnished it. They had changed the sliding valve. I done nothing with the engine at that time. Albert said if I touched the engine he would kick me off the mill. I proposed to examine the engine and make it all right at the time, and Albert said if I touched the engine he would kick me off the mill. Then I went home."

Suit was commenced November 28th, 1874.

On the 21st of June, 1875, defendants' attorney wrote to plaintiffs' attorney " that the defendants will be ready to stop their mill between the 5th and 10th of July, 1875, to give the plaintiffs the privilege to comply with their contract in the sale." In pursuance of the notice plaintiffs sent A. O. Frick and George W. Moore. Frick testified: " After we tried the engine at the saw-mill, I asked Mr. Albert whether it was satisfactory. No, sir; he was not satisfied. He had sent to Philadelphia or somewhere, and he had not got the machine as he called it for testing. I told him all right, we would wait until he had that machine there and have it tested. Says I, further than that, if you want it, we'll get a machine at our own expense and have it tested by a dynometer indicator. No, sir, says he, I won't have it, we have fooled enough with it. He refused to let me apply that test. In the first place he proposed it, and then when I agreed to

it, we would not only allow it to be done, but at our own expense, then he refused to have it done."

Moore testified : " The proposition was to get an indicator dynometer to test it on purpose, and after his proposition was accepted by us to give it the kind of test he wanted, then he refused and wouldn't have it done."

Isaac Albert, one of the defendants testified: " In the summer of 1875 Frick and Moore came there to test this engine. What was done toward testing it I don't know. I didn't see it done. They said they took out a valve. I didn't see it. I had to work out in the field. The first time he was there to test it, I told him I wouldn't have anything done to it until I would see my attorney, then on the next day I told him he should stay off the mill. He got, of course, sassy, and I talked a little sassy. I told him I would just kick him off the mill. · He left. Didn't tell him I shouldn't have any test, I told him I would see my attorneys first. Then I saw Mr. Packer, and he wrote to them and told them they should come on and test the engine. Then they came—him and this Moore."

On cross examination he testified:

" Frick didn't say to me he would have it tested, and prove to me it was a forty-horse power, to my recollection. If he had said so, he would have had a chance to do it. Why didn't he do it? I didn't tell him *he shouldn't do it;* because he left. They had all the chance to do it. I didn't say that to Mr. Frick in the presence of Mr. Moore. I am sure of that, because I gave them every chance there. They had all they asked of me. They had the whole mill there for a week."

The Court below, ELWELL, P. J., charged the jury, *inter alia.*

" The evidence as to the use of this machine and what it had done before, and what others had done of the same kind, you will take into consideration what it actually did, and any defects in its construction which have been given in evidence. You will take it all into consideration in making up your minds whether it was forty-horse power. If you find it was, and it was put in proper condition to operate, then the plaintiff would be entitled to recover. If you find it was not, and find it was deficient, then another rule would apply, in regard to which I propose to instruct distinctly and definitely. As a general rule, where there is a special contract, which is entire in its character, the plaintiff cannot recover anything without showing the performance of all that was stipulated upon his part to be performed. But there are exceptions to this rule. If a party contract to do work or to furnish machinery or other things to another, acting honestly and with the intention of fulfilling the con-

[Albert *et al. v.* Frick.]

tract, performs it substantially, but fails in some slight particulars, the person who receives the benefit of what is done cannot hold the property and enjoy the fruits of the labor of the plaintiff without paying a fair compensation according to the contract; receiving, however, credit for what loss or damage he may have sustained by the deviations from the contract. I understand, gentlemen, that that embraces the law applicable to this case. [If you find that these plaintiffs intended to perform their contract, if they did it apparently with the intention of complying with that contract, furnishing everything, although there were defects, although the head-blocks were not such as they should be, if they were sent supposing they were, and the machinery set up and the blocks sent back being part of the machinery, but the balance of the machinery was set up and used and enjoyed, and is still enjoyed, the fact that a portion of the machinery, the head-blocks, had been returned to the plaintiffs, or that there was a defect in the machinery, would not prevent the plaintiffs from recovering what they ought, under the facts, to recover.] It would not operate in law to prevent their recovering anything, and to give over to the defendants the whole of the property. If the defendants ascertained that the engine was not what was contracted for, they might have rescinded the contract, they might have refused to keep the engine on the ground that it was not according to warranty, and then they might look to the plaintiffs for the damages for not furnishing one according to the contract. But if instead of that they concluded to keep the engine notwithstanding its alleged defects, the plaintiffs may recover, deducting damages for the difference caused by the breach of the warranty. The matters which I have thus charged you upon embrace somewhat my answers to the points which have been presented by the counsel for the respective sides, and in order that I may give their views and my own fully on these subjects, I will read the points and answer them.

"The counsel for the plaintiffs request the Court to charge the jury as follows:

" First. The refusal of the defendants, for whom the engine was furnished and put up, to permit the persons sent by the plaintiffs to examine and test the engine, for the purpose of ascertaining its actual power and exact condition by the only scientific method known, in order to enable the plaintiffs to testify to the character of the work, is evidence to show that the defendants accepted the engine as completed in a good and workmanlike manner, and as filling the contract.

[Albert *et al. v.* Frick.]

[To this point I answer that the refusal of the defendants to permit an examination of the engine is evidence in the case, the effect of which is for the consideration of the jury.

" Upon the question of the acceptance of the engine by the defendants, I say to you that good faith and fair dealing required that they should have permitted all proper tests of the capacity of the engine, and their refusal to have such tests applied is strong evidence that they believed such tests would operate against them. But it is not conclusive of the fact that the engine was such as the contract called for, nor conclusive of the fact that they accepted it as a compliance with the contract."]

" The counsel for the defendants request us to charge you :

" First. That the undisputed evidence is that the plaintiffs have not complied with their contract by furnishing all the material and machinery they agreed to furnish in writing, and the contract being an entire one, the plaintiffs cannot recover the contract price until they have shown performance on their part.

" [In answering this point we charge you that the plaintiffs cannot recover the whole contract price if they have not fully performed the contract on their part; but if they performed it substantially, furnished the machinery required for the contract, intending to perform it according to the agreement, they may recover, deducting the difference between the value of the machinery as it actually was, and the value of it as it was agreed to be.]

" Second. If the Court decline to affirm the first point, then to charge the jury that if they believe from all the evidence in the cause that the plaintiffs did not furnish or offer to furnish the ratchet head-blocks named in their contract after they had been returned as unsatisfactory, that then the plaintiffs cannot recover in this case, the contract being an entire one.

" [I decline to charge you as requested in this point. The whole contract had relation to the property treated for, which exceeded the sum of $2000. The failure to return the head-blocks after they had been sent back to be repaired or replaced, does not defeat the plaintiffs' right to recover if the contract was otherwise performed, though defectively; such failure to return the head-blocks does not prevent the recovery of the property which the plaintiffs did receive and retain. If the head-blocks were not returned, as a matter of course they came into consideration in the matter of what shall be deducted for damages if not complying with the contract."]

Counsel for defendants excepted to the charge.

November 21st, 1879, verdict for the plaintiffs for $1800, upon which judgment was entered.

The defendants took a writ of error, assigning for error the portion of the above charge contained within brackets.

*Sol. Malick* and *S. P. Wolverton* for plaintiffs in error.

The language of the Court in reply to the first point of the plaintiffs was strong and calculated to impress on the minds of the jury that the facts stated were undisputed. There is nothing in the evidence to justify this answer, and the learned judge must have been misled by a wrong impression of the testimony: Railroad Co. *v.* Chenewith, 2 P. F. Smith, 382; Insurance Co. *v.* Rosenberger, 3 W. N. C., 16; Stall *v.* Meek, 20 P. F. Smith, 181; Gregg Township *v.* Jamison, 5 P. F. Smith, 468; Musselman *v.* Railroad Co., 2 W. N. C., 105; Greber *v.* Kleckner, 2 Barr, 289; Bartley *v.* Williams, 16 P. F. Smith, 332; Riegel *v.* Wilson, 10 P. F. Smith, 393; Cullum *v.* Wagstaff, 12 Wr., 300; Morrow *v.* Commonwealth, 12 Wr., 305; Wenrich *v.* Heffner, 2 Wr., 207; Gratz *v.* Beates, 9 Wr., 505.

The contract was entire, and there could be no recovery without showing full performance. The failure was intentional, as plaintiffs below never offered to furnish the ratchet head-blocks, and made no excuse for not doing it: Shinn *v.* Bodine, 10 P. F. Smith, 182; McClurg *v.* Price, 9 P. F. Smith, 420; Shaw *v.* Turnpike Co., 2 P. & W., 454; Noble *v.* James, 2 Grant, 278; Alexander *v.* Hoffman, 5 W. & S., 382; Harris *v.* Ligget, 1 W. & S., 301; Eckel *v.* Murphy, 3 H., 488; Martin *v.* Schoenberger, 8 W. & S., 367; McManus *v.* Cassidy, 16 P. F. Smith, 260.

*George W. Welsh* and *John K. Clement* for defendants in error.

The argument of plaintiffs in error as to the answer of the Court below to the first point of plaintiffs below, is that it is error because not stated hypothetically. In either form it is essentially the same. The answer did not leave the jury under the impression that it was a conceded fact. The facts and their effects were fully left to the jury.

The evidence discloses a full purpose to perform honest efforts, and actual performance in every particular, unless not returning the head-blocks was a failure. In this the plaintiffs below were hindered by the fire, and by the action of defendants below in re-erecting their engine and procuring other blocks without consultation. It was the duty of defendants below to have given notice if they did not intend

[Albert *et al. v.* Frick.]

to accept the machinery as an entire performance : Preston *v.* Finney, 2 W. & S., 53 ; Bridge Co. *v.* Pomroy, 3 H., 151.

A contract in form entire, embracing a variety of acts more or less essential to the whole performance, may be so discharged as to sustain an averment of performance, though literal performance cannot be alleged : Chambers *v.* Jaynes, 4 Barr, 39 ; Wilhelm *v.* Caul, 2 W. & S., 26.

The opinion of the Court was delivered by MERCUR, J.

This action was on an entire contract. On such a contract, before a recovery can be had of the consideration-money, the general rule is, the plaintiff must prove he has performed or is ready to perform his part of the contract ; or that performance thereof was prevented by the defendant : Shaw *v.* Turnpike Company, 2 P. & W., 454. A substantial performance in good faith, however, is sufficient, notwithstanding some unimportant omissions, which may be compensated in damages ; and more especially is this so, when the other party has received and enjoyed the fruit of the labor performed : Preston *v.* Finney, 2 W. & S., 53 ; Chambers *v.* Jaynes, 4 Barr, 39 ; Danville Bridge Company *v.* Pomroy, 3 Harris, 151 ; Messner *v.* Lancaster County, 23 Penn. St., 291 ; Snodgrass *v.* Gavit, 4 Casey, 221 ; Stewart *v.* McQuaide, 12 Wright, 191.

This machinery in question was placed in the mill of the plaintiffs in error, and put in operative condition. It commenced running on the 25th of May. Some complaint was afterwards made, and communicated to the defendants in error early in June, that the machinery had not the requisite power, and did not work satisfactorily. He promised to send a man with the view of making it satisfactory. Through some cause the skilled machinist did not reach the premises until the 11th of June, and he then ascertained that the mill had previously burned down. This necessarily prevented the engine being tested at that time. The mill was rebuilt. The evidence in regard to the power of the engine and the working of the machinery was conflicting. There was also some evidence of a refusal by the plaintiffs in error to permit the machinery to be tested by the agent of the manufacturer sent for that purpose after the mill was rebuilt. All these questions, as well as whether there was a substantial performance of the contract, were for the jury, to which they were submitted in a clear and correct charge. We discover no ambiguity or want of perspicuity therein calculated to mislead the jury. The law was correctly declared. The evidence was not unduly commented upon. We discover no errors covered by the assignments.

Judgment affirmed.